DENNY, administrator, *et al. v.* GARDNER, executor, *et al.*

1. The present action having been begun more than the statutory period after the right of action accrued, it was barred by the statute of limitations.

2. The running of the statute of limitations against the suit was not tolled by the previous action brought against these defendants by some of the heirs of the deceased remaindermen, which was dismissed on the ground that such an action could not be maintained. *Denny* v. *Gardner,* 149 *Ga.* 42 (99 S. E. 27). In order to toll the statute the suit must

be brought by the same plaintiff or his legal representative. *Moody* v. *Threlkeld*, 13 *Ga.* 55 (5); *Cox* v. *Strickland*, 120 *Ga.* 104 (5) (47 S. E. 912, 1 Ann. Cas. 870). A void suit will not toll the statute of limitations. *Lamb* v. *Howard*, 150 *Ga.* 12 (102 S. E. 436).

3. Applying the foregoing principles, the court did not err in dismissing the petition on the ground that it was barred by the statute of limitations.

No. 2658. FEBRUARY 14, 1922.

Equitable petition. Before Judge Hammond. Richmond superior court. May 21, 1921.

The facts, as they appear from the petition as amended, with exhibits, are substantially as follows: Green H. Jordan died testate on or about February 15, 1855. Item 3 of his will provided as follows: "All the property, real and personal, heretofore purchased with my money and for which titles were taken in my name by my direction by my son-in-law, James Gardner, Esq., and which was intended for the sole and separate use of my daughter, Martha G. S. Gardner, during her life, remainder upon her death to her children, I now give and bequeath to such intention. That property is to be estimated in the division of my estate as an advancement to my daughter of twenty-one thousand, five hundred dollars, and consists mainly of the following property: The house and lot in the city of Augusta, Georgia, whereon the family of said James Gardner now lives; ten bonds of one thousand dollars each, bearing six per cent. interest, of the East Tennessee and Georgia Railroad Company; eighty shares of the Central Railroad & Banking Company; also negro slaves, Martha, Carolina and child Amelia, Fanny and her children, James and George. It is my will and desire that whatever other property may fall to her shall, like the preceding, vest for her sole and separate use during her life, remainder to her children. It is further my will and desire, that upon the death of my daughter before her husband and before majority or marriage of her children, that my son-in-law, James Gardner, be the trustee of the property of his children, and to manage and control the same for their benefit, paying to each child, as it arrives at age or marries, its share of said trust property. And as the value of particular kinds of property fluctuates, and oftentimes the owner becomes dissatisfied with it, or there exists substantial reason for a conversion of the same, with a view to a contingency which may arise, I distinctly authorize such change or conversion to be

made upon the voluntary assent in writing of my daughter and the order of the Judge of the Superior Court approving said conversion, all to be entered duly of record." Under the above-quoted item Mrs. Gardner received, as shown by the returns of the executors of Green H. Jordan of file in the court of ordinary of Baldwin County, cash, notes, stocks, bonds, and real estate (including a large plantation in Lee County) of the total value of $146,179.74. In 1860 James Gardner as "trustee of Martha G. S. Gardner, his wife," and the said Martha applied for and procured from the judge of the superior court of the Ocmulgee Circuit an order authorizing the sale of their residence at Augusta and the application of the proceeds to the purchase of a new home. The application for the order recites: "This property is now held by said James as trustee for said Martha under and by virtue of the last will and testament of Green H. Jordan." A new home, known as "Ingleside" was purchased. In 1867 James and Martha G. S. Gardner filed a petition to the judge of the superior court of the Middle Circuit, reciting that they held certain property "for the sole benefit and behoof of the said Martha and for the maintenance and education of her children," and "all or most of which said property has come into possession of your petitioners by devise, bequest, or by sale and reinvestment of proceeds of property bequeathed by the last will and testament of Green H. Jordan, . . and by the last will and testament of Elizabeth T. Jordan, . . of which last will and testament the said James is sole qualified executor. Upon that petition an order was passed, providing that "said trustee, with his said wife, do sell and make any necessary conveyances to the property contained and named in the petition, by themselves or agents, at private sale or otherwise, and that the proceeds thereof be reinvested in other lands, stocks, securities, property or estates, subject to the same limitations and restrictions contained in said wills and exhibits attached."

There were born to Mrs. Gardner six children, W. Sanford, Burwell J., Albert S. J., Mattie Jordan (who became Mrs. Denny), Elizabeth J. (who became Mrs. Grabowskii), and Mary R. (who became Mrs. Grabowskii). Mrs. Gardner died January 18, 1913, leaving a will naming her children W. Sanford Gardner, Burwell J. Gardner, Mary R. Grabowskii, and Albert S. J. Gardner executors. The first three named qualified as executors. Albert S. J.

Gardner never qualified, and died testate in June, 1913. W. Sanford Gardner and Mary Sibley Gardner qualified as executors upon the estate of Albert S. J., and they represent his interest as legatee under the will of his mother, Mrs. Gardner, and as remaindermen under the will of his grandfather, Green H. Jordan. Mrs. Gardner by her will devised to Burwell J. Gardner, W. Sanford Gardner, and Mary R. Grabowskii, as trustees, a one-sixth part of her estate for F. A. Grabowskii; and the trustees have received and are holding the property so devised. Mrs. Gardner made a codicil to her will, which states that of the money paid for the purchase of the new home Ingleside "$9000 was held by my husband, James Gardner, as trustee under the will of my father Green H. Jordan -- the terms of said trust being that the trustees should hold for the sole and separate use of myself during my life and at my death to my children. Feeling as I do that nine twenty-fifths of said property should at my death belong to said trust estate under the will of my father, and that it should descend in the precise method therein expressed, and desiring to remove in my lifetime all question as to the true condition of the title to said property, and desiring also to place the title to said property in such a condition that it can be legally transferred and conveyed after my death if occasion should arise, therefore I place on public record, in this codicil to my will, the fact that $9,000 of said trust estate went into the purchase of said property," etc. Elizabeth J. Grabowskii died intestate, October 2, 1887. Mattie Jordan Denny died intestate, April 29, 1904. F. A. Grabowskii was, on August 4, 1919, appointed administrator upon the estate of Elizabeth Jordan Grabowskii, and on the same date R. A. Denny was appointed administrator upon the estate of Mattie Jordan Denny. In their capacity as administrators upon these two estates they filed, on January 6, 1920, a petition alleging, in addition to the facts already set out, that the respective estates represented by them were each entitled to a one-sixth undivided interest in all of the property which passed under the will of Green H. Jordan to Mrs. Gardner, and in such property as the proceeds of sales of any of the devised property may have been invested in by Mrs. Gardner, the life-tenant; that while she "thus received possession of said property from the executors of said Jordan with the trust powers aforesaid, she personally acquired thereby only the rights given,

with duties imposed upon her by law as such life-tenant, viz., to use and enjoy the rents, interest, issues, and profits thereof during her natural life, and in making changes of investment of the corpus under said trust power in said will she was in duty bound to preserve the corpus for those entitled thereto under the said will after her death, and not mingle nor confound nor merge the same with her own property, so that the same could be readily identified after her death. As life-tenant she sustained a trust and fiduciary relationship to said remaindermen, under which she was bound as trustee to account to them as such for all property so received as aforesaid;" that said life-tenant "kept no correct [account] of her acts and doings . . in selling and disposing of said property, as she was in duty bound to do;" that during her life she "so confused, confounded, or mingled said property with her own as to permit or cause said Jordan property to disappear, so that it could not be identified at the end of her life-estate;" that of the property passing under the above item of the will of Green H. Jordan personal property of the value of $70,000 was not forthcoming upon the termination of the life-estate; that a plantation in Lee County consisting of some 3640 acres, listed in the inventory filed by the executors of the estate of Mrs. Gardner as the property of her estate, originally belonged to the testator Jordan, and is now the property of the remaindermen in his will, and that sundry real estate in Fulton County, listed in said inventory as the property of her estate, was purchased with the proceeds of property of the Jordan estate and which she had sold; that the life-tenant, in voluntarily exercising the power conferred upon her by the will of said Jordan, and in mingling the same with her own property, and by possessing and managing and controlling the same under said power, became and was trustee for the benefit of said remaindermen under the will of Green H. Jordan, and that her executors are liable to account to petitioners for the property so received by said life-tenant under said Jordan will. The prayers were, that the defendants be required to produce the identical property passing under the Jordan will, together with the title papers to the realty, and to discover upon oath the property into which the proceeds of certain sales of the property had been invested; that upon default of production of the identical property received from the estate of

Green H. Jordan, except slaves, the court decree that all the property left by said Martha and described in the inventory filed by her executors (the defendants in this suit) be the property of the remaindermen under the will of Green H. Jordan until each and all have received their shares of said personal property under said will; that the shares of petitioners' intestates in said personalty be charged against said realty; that the defendants be required to account for the income of all of said property since the death of Mrs. Gardner; that the proceeds of the same and of all sales of property be partitioned in equity, and one sixth thereof assigned to each of petitioners as their absolute property; that the defendants be required to pay off said judgment or decree from the assets received by them as executors of Martha G. S. Gardner; that the defendants, Burwell J. Gardner, W. Sanford Gardner and Mary R. Grabowskii, as trustees of Martha Goodwin Denny, Richard A. Denny Jr., and F. Adolph Grabowskii, and W. Sanford Gardner and Mary Sibley Gardner, as executors of Albert S. J. Gardner, be required to satisfy from the property delivered to them such judgments as petitioners may obtain against said executors; and for general relief. An amendment to the petition recites that " since the institution of this suit all land passing to petitioners' intestates under the will of Green H. Jordan has been divided among those entitled thereto, and no actual land is claimed by petitioners in this case."

The defendants filed a demurrer setting up that the petition showed upon its face that Martha G. S. Gardner, life-tenant under the will of Green H. Jordan, died on January 18, 1913; that her will was duly probated March 31, 1913; that her executors qualified in the interval between the probate of said will and April 5, 1913; that Mattie J. Denny and Elizabeth J. Grabowskii, of whose estates the plaintiffs are administrators, both died more than five years before the death of the life-tenant; that all of the alleged causes of action and claims of plaintiffs for and in relation to all personal property received by said life-tenant from the executors of said Green H. Jordan, and for and in relation to the proceeds or substitutes thereof, and the proceeds of all real estate alleged to have been converted by her, accrued twelve months from the qualification of her executors and more than six years before the commencement of this action, and are barred by the

statute of limitations; that it affirmatively appears that all the alleged causes of action, right to discovery, accounting, and all other relief accrued twelve months from the qualification of the executors of Mrs. Gardner and more than four years before the commencement of this action, and are therefore barred by the statute of limitations. The demurrer was amended by setting up that the plaintiffs had delayed unreasonably the bringing of the action, and had been guilty of such laches as to render the enforcement of the alleged claims and causes of action inequitable; and that a court of equity should interpose an equitable bar. The demurrer was sustained, and the petition dismissed.

*William K. Miller* and *Graham Wright,* for plaintiffs.

*Hamilton Phinizy* and *Archibald Blackshear,* for defendants.

GILBERT, J. The court did not err in sustaining a demurrer to the petition, on the ground that it was barred by the statute of limitations. It appears that the petition was filed a little more than six years after the qualification of the executors of the life-tenant. It is insisted by the plaintiffs in error that the suit is not barred until ten years from such date has elapsed, on the ground that the life-tenant was, by operation of law, a trustee for the remaindermen, and as such held the property for which the remaindermen sue. Civil Code (1910), § 4366, which has reference to limitation of actions against trustees, applies only to technical trusts. *Farrar* v. *Southwestern R. Co.,* 116 *Ga.* 337, 345 (42 S. E. 527). The facts alleged in the petition do not show that the life-tenant sustained such a relation to the remaindermen and the property devised to them by the testator, Jordan, as to constitute her such a technical trustee; consequently the executors of the life-tenant, Mrs. Gardner, were not such technical trustees, and the above-mentioned section of the Civil Code does not apply to the action brought against them. There is some attempt to meet this by alleging in the petition that certain of the property was concealed by intentionally or unintentionally mingling with other funds of the life-tenant; and it is to be inferred that petitioners seek to meet the contention that the four-year statute is applicable, by relying on the allegation that their rights in this property were not known. It might be that either the life-tenant or the executor of a life-tenant might so conceal the property to which a remainderman would have a right upon the death of the life-

tenant that the statute would be tolled; but the petitioners should have set forth clearly and distinctly that their rights were so concealed as to cause excusable ignorance on their part as to their rights, but in doing this they should have alleged distinctly when they learned of their rights, so that the court would know when the statute began to run, or they should show that they could not have discovered it by proper diligence. Taking the allegations of the pleading most strongly against the petitioners, it does not appear that their rights were unknown to them. If, knowing they had rights, upon the death of the life-tenant and the appointment of her executors they were not able to identify this property, as pointed out, they should then have moved, and not waited until after the statute had attached. No facts are clearly and distinctly alleged in this petition which takes it out of the four-year rule. If we were sustaining this demurrer on the ground of laches, it might be necessary to consider the suit which was brought by the individual heirs, and which this court held could not be maintained. *Denny* v. *Gardner,* 149 *Ga.* 42 (99 S. E. 27). But that suit did not have the effect of extending the time within which action could be brought. The suit against the executors of the life-tenant does not fall within the said section as a suit brought against executors, because said section applies to suits brought against persons having possession of property as executors of the testator, from whom the petitioners claim as heirs. The petitioners in this case claim as remaindermen under the will of Green H. Jordan. The defendants are executors of the estate of Mrs. Gardner, life-tenant under the will of said Jordan. The remaindermen could not sue until the death of the life-tenant. Conceding that her executors could not be sued within twelve months from their qualification under the Civil Code (1910), § 4015, adding one year on account of this statutory immunity from suit to the four years limitation provided in the Civil Code (1910), § 4362, this suit was barred after five years from the qualification of the executors in 1913. The suit was filed in 1920, and is therefore barred.           *Judgment affirmed. All the Justices concur.*